UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YVONNE BLOUNT,

              Plaintiff,                    CASE NO.: 2:07-CV-13101

vs.                                  DISTRICT JUDGE VICTORIA A.ROBERTS
                                  MAGISTRATE  JUDGE STEVEN D. PEPE

GORDON H. MANSFIELD SECRETARY,
DEPARTMENT OF VETERANS AFFAIRS
              Defendant.
_____/

## REPORT AND RECOMMENDATION

      Plaintiff, Yvonne Blount, filed a complaint on July 24, 2007 raising two distinct issues,

the first was for review of her firing before the Merit Systems Protection Board ("MSPB"),

5 U.S.C.A. § 7702 (a)(1), and the second was for an employment discrimination claim for

violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

("Title VII") and the Rehabilitation Act of 1973, 29 U.S.C. §701 *et seq.*  On March 17, 2008,

Plaintiff filed a motion for summary judgment (Dkt. #16) to which Defendant responded and

filed a cross motion for summary judgment on the grounds that the decision of the MSPB was

supported by substantial evidence, was not arbitrary, capricious or an abuse of discretion and

was made in accordance with law (Dkt. #19).  On May 30, 2008, Defendant filed a motion for

summary judgment pursuant to Fed. R. Civ. P. 56 that there were no genuine issues of material

fact on the issue of employment discrimination (Dkt. #23).  Plaintiff filed her response on June

12, 2008 (Dkt. #24).  All pretrial proceedings were referred under 28 U.S.C. § 636(B)(1)(A) and

(B)(Dkt. #7).  For the reasons stated below, it is **RECOMMENDED** that Plaintiff's motion be

**DENIED** and Defendant's motions be **GRANTED**.

I.     **BACKGROUND FACTS**

       **A. Employment History**

       Plaintiff began her employment in VA Medical Center in Allen Park, Michigan in March

1987 (Dkt. #15, Tr. p. 113).  In 1988, she was reassigned to a GS-4 position in building

management taking over the role as timekeeper and secretary (Dkt. #15, Tr. pp. 113-114).  In

1996, the Medical Center moved from Allen Park to the John D. Dingell VA Medical Center in

Detroit, Michigan.  After the move, Plaintiff worked in the administrative offices of the Mental

Health Department ("MHD") (Dkt. #15, Tr. pp. 115-116).  In November 2003, she filed a sexual

harassment complaint against a male coworker at the MHD (Dkt. #15, Tr. pp. 116-117).  The

complaint (hereinafter "the EEO complaint") was resolved by transferring Plaintiff from MHD

to a GS-5 secretary position in the VA Police Unit on November 30, 2003 (Dkt. #15, Tr. pp. 53,

117, 119, 302).

       The VA Police Unit consists of thirty police officers, secretaries and a supervisor with

the police officers divided into three work shifts during a 24-hour period (Dkt. #15, Tr. pp. 52,

55). Plaintiff was assigned to type reports, file documents, perform timekeeping functions,

complete travel arrangements for employees, prepare the paperwork needed to process tickets in

U.S. District Court and distribute badges and/or keys to the police officers. Dkt. #14, D. pp 505-

510; Dkt. #15, Tr. pp. 54,103).  Her daily assignments were given to her by Mr. Charles

Lawrence, Chief of Police Operations and Mr. Leon Brown II, Chief of Protection and Support

Services was her direct supervisor (Dkt. #15, Tr. pp. 52, 102, 103).

Chief Lawrence, on May 16, 2004, evaluated Plaintiff's job performance as successful in six critical areas: (1) Safety; (2) ADP; (3) Cost Containment; (4) Communication/interaction; (5) Interpersonal/Professional Responsibility; and (6) Technical Skills, but felt that she had room for improvement stating that Plaintiff needed to "work on punctuality" and "learn more about the job." (Dkt. #13, D. p. 310; Dkt. #15, Tr. pp. 120).  Less than six weeks later, on June 24, 2004 , Plaintiff was admonished for "unexcused tardiness." (Dkt. #13, D. p. 339).  She was again reprimanded for unexcused tardiness and absence without official leave in September 2004.

On September 31, 2004, Plaintiff broke her right ankle and as a result was absent from work until January 17, 2005 (Dkt. #1, p.4).  Interestingly enough, during her absence, on December 17, 2004, Plaintiff received a performance appraisal from Chief Lawrence rating her job performance as fully successful in each of the six critical areas (Dkt. #13, D. p.314-319).

Beginning in the spring of 2005, Plaintiff's job performance became an issue for the department.  Chief Lawrence discovered that there were problems with her timekeeping records, many of the police officers complained to him that they were not being paid for time worked, including overtime, because of errors Plaintiff made on their time cards (Dkt. #15, Tr. pp. 55-57).  Chief Lawrence, in an attempt to fix the situation, spoke with Plaintiff regarding the time card errors on several occasions and arranged for Plaintiff to receive additional training (Dkt. #15, Tr. p. 58).  On May 5, 2005, Chief Lawrence counseled Plaintiff about timecard errors involving police officers on the midnight shift (Dkt. #14, D. p. 504).

There were additional issues with Plaintiff's administrative abilities.  Also at the May 5, 2005 meeting, Chief Lawrence spoke with Plaintiff about her failure to correctly process the U.S. District Court violations (Dkt. #14, D. p. 501).   In August 2005, he spoke to Plaintiff regarding

errors in a travel order.  Plaintiff redid the travel voucher, but the document still contained errors that required correcting (Dkt. #14, D. p.501-502).

In September and October of 2005, Plaintiff continued to make errors on time cards and travel vouchers (Dkt. #13, D. p.497, 498, 503). She also failed to attached the required paperwork to tickets that had been referred to the United States Attorney's Office (Dkt. #14, D. p. 500-502, 604, 605).  In addition to these job performance problems, in July of 2005, an employee complained that Plaintiff had become loud and rude to her, and Plaintiff was excessively tardy to work (Dkt. #14, D. p. 504, 563-568).

On October 6, 2005, Chief Lawrence complained in writing to Chief Brown about Plaintiff's job performance.  He described her job deficiencies for the time frame of May to October 2005 (Dkt. #14, D. p.500-502).  He wrote that Plaintiff was defiant, argumentative and chronically tardy for work (Dkt. #14, D. p.502).  On October 13, 2005, Chief Lawrence met with Plaintiff to discuss matters related to her job performance: time keeping problems, travel voucher errors, omissions from the reports to U.S. District Court as well as her attendance (Dkt. #13, D. p.333).

On October 31, 2005, Plaintiff was advised in writing that her job performance was less than fully successful in two critical areas: "Communication/interaction" and "Technical Skills." (Dkt. #14, D. p. 546-550).  Chief Brown proposed a ten-day suspension based upon the performance problems that occurred from September 19 to October 11, 2005 (Dkt. #14, D. p. 500-502, 563-565, 569-570). Plaintiff responded to the charges underlying the proposed suspension, but was unable to convince Chief Brown to rescind the disciplinary action. She was suspended from January 23, 2006, to February 1, 2006 for "failure & delay in carrying out

instructions, careless or negligent workmanship and excessive tardiness."(Dkt. #14, D. p.474).

In addition, she was placed on a 90-day Performance Improvement Plan ("PIP") (Dkt. #14, D. p.566-568). Under the terms of the PIP, Plaintiff was allotted 90 days to demonstrate acceptable performance with respect to three specific assignments: travel orders, time cards and U.S. District Court violations (Dkt. #14, D. p.567-68). Chief Lawrence met with Plaintiff approximately five times during the PIP time frame to discuss her performance and provide her with support (Dkt. #14, D. p.471-473, 587; Dkt. #15, Tr. pp 74-77).

Despite these efforts and warnings, Plaintiff continued to make mistakes while she was on the PIP. For example, in November 2005, she gave Chief Lawrence a report to review that contained several errors requiring another employee to correct it (Dkt. #14, D. p. 454). She also prepared a travel order for an employee with several pieces of pertinent information missing such as the vendor codes and calculation for round-trip mileage (Dkt. #14, D. pp. 454). In addition, she made several errors on the time cards for at least three police officers who in turn complained to Chief Lawrence because they were not getting paid as they should have been (Dkt. #13, D. pp. 240-43, Dkt. #15, Tr. pp 64-69, A482-483, 487, 497-499, 504). Next, it was discovered that Plaintiff made errors on a report related to U.S. District Court violations (Dkt. #14, D. p. 551-54). In January 2006, Chief Lawrence learned that Plaintiff continued to disregard his instructions as to the appropriate area to park her car. He also felt that Plaintiff was not trustworthy on several matters: her attempt to have him paged while he was out of the office, whether or not she had received a document that he sent to her via email, and how she had handled a complaint from a police officer regarding missing overtime. On January 21, 2006, he advised Human Resources of these incidents (Dkt. #14, D. p. 475).

At the end of February 2006, Chiefs Lawrence and Brown assessed Plaintiff's job performance for the time period beginning on October 1, 2005, and ending on February 17, 2006 as unsatisfactory. In a letter dated February 17, 2006, written to Plaintiff, Chief Lawrence advised her that her job performance skills in technical skills was unacceptable and that she had failed to perform at the minimum level required for her secretary position during the PIP (Dkt. #14, D. pp. 574-76).

On March 14, 2006, Chief Brown recommended termination of Plaintiff for unacceptable performance in the area of "Technical Skills" for the period of November 3, 2005, through February 4, 2006 (Dkt. #14, D. pp. 454-56). Plaintiff was advised that the Medical Center Director, Mr. Michael K. Wheeler, would make the final decision and that she could submit a verbal and/or written reply for his consideration (Dkt. #14, D. pp. 455-56). Plaintiff submitted a written reply and met with Mr. Wheeler on April 12, 2006 (Dkt. #14, D. pp. 422, 452-453). On May 5, 2006, Mr. Wheeler sustained the termination and issued a decision removing Plaintiff from her VA employment.

**B. EEO Activity: Sexual Harassment Complaint**

Plaintiff filed a sexual harassment complaint against a male coworker in 2003. On November 26, 2003 the parties signed a Settlement Agreement that resulted in Plaintiff being reassigned to the GS-5 secretary position in the Police Unit (Dkt. #1, p. 4).

Approximately two years later, on November 19, 2005, Plaintiff contacted the VA's EEO Office in Brecksville, Ohio, to state that the settlement agreement had allegedly been breached by the agency (Dkt. #13, D. p. 392). On November 21, 2005, Plaintiff sent a fax to the VA's

Office of Resolution Management in Washington D.C., with the same allegations.

By letter dated December 23, 2005, the Office of Resolution Management issued a final agency decision that the settlement agreement had not been breached (Dkt. #13, D. pp. 392-97).

On January 23, 2006, Plaintiff contacted an EEO Counselor and complained about the Performance Improvement Plan (PIP) dated October 31, 2005, not receiving special parking on January 16, 2006, and the suspension of January 20, 2006 (Dkt. #13, D. p. 398). Plaintiff was informed, by letter, that she had a right to file a discrimination complaint (Dkt. #13, D. p. 399-400).

On February 23, 2006, Plaintiff filed a complaint of discrimination challenging her suspension and the PIP. On May 6, 2006, Plaintiff appealed her termination to the MSPB (Dkt. #13, D. p. 118-124). In July 2006, her appeal was dismissed without prejudice because it was not timely filed (Dkt. #13, D. p.7-12). Plaintiff timely refiled the appeal, and on October 12, 2006, a hearing was held before Administrative Judge ("AJ") Nina Puglia (Dkt. #13, D. p. 231). In a decision dated December 1, 2006, the AJ affirmed Plaintiff's termination and found no discrimination (Dkt. #13, D. pp. 231-262).

Plaintiff petitioned the MSPB to reconsider the initial decision issued by the AJ (Dkt. #13, D. p. 157). On April 13, 2007, the MSPB issued a final order affirming the initial decision and concluding that "the administrative judge made no error of law or regulation that affects the outcome." (Dkt. #13, D. p. 157). On May 7, 2007, Plaintiff filed a petition with the Equal Employment Opportunity Commission (EEOC) seeking a review of the MSPB findings regarding her discrimination claims. In a decision dated June 26, 2007, the EEOC concurred with MSPB finding of no discrimination (Dkt. #13, D. pp.139-140, 248-250). On July 24, 2007,

Plaintiff filed her *pro se* complaint with this Court against the Secretary of Veterans Affairs (Dkt. #1).

### C. Procedural History

Plaintiff filed a Motion For Summary Judgment on March 17, 2008 (Dkt. # 16). On March 26, 2008, Plaintiff filed a Request for Production of Documents (Dkt. # 17). On April 18, 2008, Defendant filed a Cross Motion for Summary Judgment (Dkt. # 19). On April 21, 2008, Plaintiff filed a Motion for Default Judgment (Dkt. 20) to which Defendant responded on April 30, 2008 (Dkt. # 22). On April 22, 2008, Defendant filed a Motion to Extend Time (Dkt. # 21).

In an order issued on July 18, 2008, the Court ordered the following documents to be produced by Defendant:

> (1) a list of the bargaining unit employees as of May 5, 2006, at the John D. Dingell Department of Veterans Affairs; and
>
> (2) an answer as the union status of her successor.

(Dkt. #25). The two discovery items were to be produced within 30 days of the order. In the same order, the Court denied Plaintiff's motion for default judgment and granted the Defendant's motion to extend. On July 24, 2008, Plaintiff filed an objection to the July 18th order arguing that she complied with the scheduling order, filing her motion for summary judgment on time but was prejudiced because discovery was not complete at the time of her filing (Dkt. #26). On September 3, 2008, Plaintiff wrote a letter to the Court referencing the portion of the order from July 18, 2008, granting limited and enumerated discovery (Dkt. #27). From her letter, it can be determined that Defendant complied with the order providing both a list of the bargaining unit employees as of May 5, 2006, at the John D. Dingell Department of Veterans Affairs and the union status of Plaintiff's successor: a non-bargaining unit employee.

## II.   ANALYSIS

### A.   Standards Of Review

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party

demonstrates there is no genuine issue as to any material fact.  The Supreme Court has

interpreted this to mean that summary judgment should be entered if the evidence is such that a

reasonable jury could find only for the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 249 (1986).  The moving party has "the burden of showing the absence of a genuine issue

as to any material fact."  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).  *See also Lenz*

*v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985).  In resolving a summary judgment motion, the

Court must view the evidence in the light most favorable to the non-moving party.  *See Duchon*

*v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711

F.2d 1319 (6th Cir. 1983).  But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S.

317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary
> judgment, after adequate time for discovery and upon motion,
> against a party who fails to make a showing sufficient to establish
> the existence of an element essential to that party's case, and on
> which that party will bear the burden of proof at trial.  In such a
> situation, there can be "no genuine issue as to any material fact,"
> since a complete failure of proof concerning an essential element
> of the non-moving party's case necessarily renders all other facts
> immaterial.  The moving party is "entitled to a judgment as a
> matter of law" because the non-moving party has failed to make a
> sufficient showing on an essential element of her case with respect
> to which she has the burden of proof.

Moreover, when a motion for summary judgment is filed, the adverse party may not rely "upon

the mere allegations or denials of the adverse party's pleading, but . . . by affidavits or as

otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

**B. Factual Analysis**

**1. Discovery Completed**

The first issue that must be resolved prior to an analysis of the various claims is to determine if discovery in the case has been completed. Plaintiff contends in her June 12, 2008, response to Defendant's motion for summary judgment (Dkt. #24) that the Defendant failed to respond to her discovery requests. On July 18, 2008, the Court ordered the Defendant to provide to Plaintiff, (1) a list of the bargaining unit employees as of May 5, 2006, at the John D. Dingell Department of Veterans Affairs; and (2) an answer as the union status of her successor in fulfilment of the outstanding discovery requests (Dkt. #25).

On September 3, 2008, Plaintiff wrote a letter to the Court arguing that while the Defendant complied with the letter of order, she wanted more information (Dkt. #27). She wrote that the list of employees made no mention of any bargaining unit status. As to the status of Plaintiff's successor, Plaintiff argued that "Defendant did not produce any corroborating documentation or evidence to support the fact that Ms. Monique McKinney is a non-bargaining unit employee." Her arguments, however, are not persuasive because Defendant complied with the order, nothing more was required of him. He was ordered to provide a list of only the bargaining unit employees, not all employees as Plaintiff suggested in her letter, and Defendant was not required to provide corroboration for the status of the successor. Furthermore, it is not clear from Plaintiff's letter that Ms. Monique McKinney was in fact her successor. Defendant was not required to produce the name of the successor, only the status of the successor. It is

determined that discovery was completed, and the facts of the case, therefore, are properly before the Court for analysis of the parties' motions.

### 2. MSPB review and Performance Standards

The standard of review of MSPB decisions is established by statute. 5 U.S.C. § 7703(c). The decision of the MSPB must be affirmed unless it is found to be:

> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (2) obtained without procedures required by law, rule or regulation having been followed; or
> (3) unsupported by substantial evidence.

*Id.* A federal agency may demote or remove an employee for unacceptable performance, which 5 U.S.C.§ 4301(3) defines as "performance which fails to meet established requirements in one or more critical elements of the job." *Lisecki v. Merit Systems Protection Board*, 769 F.2d 1558, 1562 (Fed. Cir. 1985). If an employee's performance is found to be unacceptable, after he or she has been given a reasonable opportunity to improve, the agency may demote or remove the employee. 5 U.S.C.§ 4303(a). When reviewing decisions regarding performance based actions covered by 5 U.S.C. §§ 4301 *et seq.*, deference should be given to the agency's judgment regarding the employee's job performance. *Martin v. Federal Aviation Administration*, 795 F.2d 995, 996 (Fed. Cir. 1986). Federal courts should not engage in *de novo* review of MSPB factual findings, so long as the findings are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" they must be confirmed. *Brewer v. United States Department of Justice*, 227 Ct. Cl. 276, 279, 647 F.2d 1093, 1096 (1981), cert. denied, 454 U.S. 1144 (1982).

Credibility determinations made by administrative judges are entitled to deference. *Kewley v. Dep't. of Health & Human Services*, 153 F.3d 1357, 1365 (Fed. Cir. 1998); *Jackson v. Veterans Admin.*, 768 F.2d 1325, 1331 (Fed. Cir. 1985). Indeed, "an evaluation of witness credibility is within the discretion of the board," [and therefore], "such evaluations are 'virtually unreviewable' on appeal." *King v. Dept of Health & Human Services*, 133 F.3d 1450, 1452 (Fed. Cir. 1998).

Plaintiff, in her motion for summary judgment, claims that the performance standards against which she was measured were invalid because they had not been approved by the Office of Personnel Management (Dkt. #16, p. 2-3). By statute, each agency is required to establish:

> performance standards which will, the maximum extent feasible, permit the accurate evaluation of job performance on the basis of objective criteria . . . related to the job in question

5 U.S.C. § 4302(b)(1). Standards must be sufficiently objective and precise in the sense that most professionals would understand their meaning and requirements and adequate to inform the employee of what is necessary to achieve a satisfactory rating. *Wilson v. HHS*, 770 F.2d 1048, 1052 (Fed. Cir. 1985); *DePauw v. U.S. Trade Commission*, 782 F.2d 1564, 1566 (Fed. Cir. 1986), *cert. denied*, 479 U.S. 815.

The performance standards for achieving Technical Skills were sufficient to alert a reasonable professional to what is required. As the AJ noted, the technical skills element was one of the six critical elements used to measure Plaintiff's job performance (Dkt. #13, D. p. 235; Dkt. #14 pp. 463-467). The AJ found that the Technical Skills element included the following standards:

> (1) Display knowledge and skills to perform work of the organization;
> (2) Understand processes, procedures, standards, methods and new technologies;

> (3) Demonstrates functional and technical literacy; and
> (4) Knowledge and ability to properly file VA records and forms in accordance
> with VA Police regulations.

(Dkt. #14, D. pp. 540, 547, 552). When Plaintiff was placed on the 90-day PIP she was specifically advised that the standards for measuring technical skills would include among other things, timely and accurately processing time cards, travel orders and US District Court Violations (Dkt. #14, D. p. 552).

In addition, she was told which assignments she would need to accomplish in order to demonstrate acceptable performance (Dkt. #14, D. pp. 567-68). The critical elements and performance standards identified in the PIP and the performance appraisals were consistent with the duties and specifically communicated to Plaintiff in order to demonstrate acceptable performance and as set forth in the job description for the secretary position. (Dkt. #14, D. pp. pp. 506-510, 567-68)

Furthermore, the evidence shows that Plaintiff was required to perform timekeeper duties, therefore she should have been able to competently process time cards (Dkt. #14, D. p.611). Plaintiff's job description further indicates that her secretarial duties included maintaining time and leave records for the entire section, handling overtime and compensation time requests, arranging for all official travel for the unit, as well as typing all correspondence and reports (Dkt. #14, D. pp. 505-510). There is no evidence that Plaintiff objected to her job description or the performance standards set forth in her appraisals. Plaintiff argues that the VA did not provide evidence that her Performance standards were developed at the beginning of the appraisal period or that she was told about the requirements in advance (Dkt. #16, p. 5). This argument is not supported by the record and Plaintiff knew as early as 2004 that she was to be

evaluated on the element of Technical Skills as part of her annual evaluation (Dkt. #14, D. pp. 540, 552).

Plaintiff also claims that because there were no typed asterisk marks by the job elements, only handwritten ones, the standards cannot be considered as critical elements of her job. (Dkt. #16, p. 4). Irrespective of the nature of the asterisk marks, Plaintiff had adequate notice of her deficiencies. There were six critical elements of the secretary position. Plaintiff was deficient in technical skills. The 90-day PIP was designed to address that particular problem. The handwritten asterisk was no doubt placed on the document to help her focus and correct a specific aspect of her performance (Dkt. #14, D. p. 468- 470). The AJ noted that "the agency went a considerable way toward describing exactly what the appellant was expected to produce in the technical performance of her duties." (Dkt. #13, D. p. 237). Therefore, **IT IS RECOMMENDED** that because the evidence as a whole substantially supports the findings of the AJ, the MSPB's decision that the performance standards were valid should be **AFFIRMED.**

As to the charge of abuse of discretion, there is no evidence that the Department of Veteran Affairs abused its discretion when it applied the performance standards and terminated Plaintiff for poor performance. The VA provided Plaintiff with a reasonable opportunity to improve her performance prior to separating her from federal service. The VA recited the formal performance criteria for the critical element of technical skills in the PIP letter and the PIP evaluation.(Dkt. #13, D. pp. 552, 567). In addition, the VA provided Plaintiff with numerous, specific examples of how she had failed to meet the relevant criteria in the previous months (Dkt. #14, D. pp. 566-67). The VA established a lenient standard for success during the PIP and gave Plaintiff 90 days to demonstrate job acceptable performance in this area (Dkt. #14, D. p. 567).

During the PIP, the VA made numerous efforts to assist Plaintiff with her performance. Chief Lawrence initiated regular meetings to give Plaintiff guidance on her progress or lack of progress. He met with her at least five times to discuss her performance during the 90-day evaluation period documenting these efforts in a memorandum dated February 2, 2006 (Dkt. #14, D. pp. 471-473, 587). Based on this evidence, the AJ found that the VA had proven that it had given Plaintiff an opportunity to improve (Dkt. #13, D. p. 246).

In a letter to Plaintiff dated October 31, 2005, the VA identified the general nature of her failure to perform acceptably, provided specific examples of her past failures, suggested specific actions that would improve her performance, offered to assist Plaintiff to improve her performance, and announced a 90-day performance improvement period (Dkt. #13, D. p.104-11). The AJ found that the PIP provided Plaintiff with a reasonable opportunity to demonstrate acceptable performance. (Dkt. #14, D. pp. 566-69).

The VA did not abuse its discretion when it placed Plaintiff on a PIP, provided her with an opportunity to improve her performance and terminated her employment after she failed to do so. The evidence shows that Plaintiff repeatedly made mistakes regarding time cards, travel arrangements and preparing reports related to U.S. District Court violations, to wit; she incorrectly completed flight arrangements for a police officer in the department (Dkt. #14, D. p. 566); she failed to properly submit the travel arrangement for Mr. Ring, another employee in the department (Dkt. #14, D. p. 468); she omitted the vendor code and round trip mileage for Mr. Ring's trip to Little Rock, Arkansas. *Id* (Dkt. #15, Tr. pp 62-64); and she consistently submitted incorrect reports to the U.S. Attorney's Office and on some occasions she forgot to attach the required reports to the federal tickets (Dkt. #14, D. p. 567). The AJ sustained this charge

because Plaintiff admitted that she made the mistake regarding these matters (Dkt. #15, Tr. pp 174).

Next, the evidence showed that between November 2005 and January 2006, Plaintiff made numerous technical errors regarding the time cards of three officers, Officers Knight, Stewart and Browne resulting in them not being paid overtime (Dkt. #13, D. pp. 240- 243; Dkt. #14, pp. 482-83, 487; Dkt. #15, Tr. pp 64-69). Plaintiff concedes that she made the time card errors but argues that "it would be impossible to perform with 100% accuracy for twelve months." (Dkt. #16, p. 13). She further claims that because the police officers work in three shifts and her office is located on a different floor, "it is virtually impossible for [her] to know who is on duty at any given time." *Id.* These excuses do not create a genuine issue of material fact on the issue as to the Department's discretion in terminating her employment.

Besides, her mistakes were not a one-time occurrence. She was placed on the 90-day PIP because in September and October of 2005, she made errors on the time cards of Officers Hardaway, Lentz, Knight and Majetts (Dkt. #14, D. pp. 566-67). At the hearing, Plaintiff denied the charges and offered various excuses for her failed performance. The AJ, however, found that Plaintiff was not as credible as the agency's witnesses (Dkt. #13, D. p. 243).

As to the issue of U S District Court Violations, her mistakes in attaching an incorrect copy of a required report (Dkt. #14, D. p. 469; Dkt. #15, Tr. pp. 71-74) was unacceptable in light of the VA's mission to resolve complaints from the U.S. Attorney's Office regarding missing reports (Dkt. #14, D. pp. 604-05).

In summary, the PIP letter of October 31, 2005, provided adequate and fair warning about the types of behavior that would constitute poor performance. Plaintiff, however,

continued the same types of behavior that had led to being place on PIP in the first place. As the AJ noted, the MSPB "has no authority to mitigate an agency action taken against an employee for performance-based reasons under 5 U.S.C.A. §4301 *et seq.*" (Dkt. #13, D. p. 257). The AJ affirmed the VA's decision because the evidence demonstrated that Plaintiff's job performance as a secretary was unacceptable in the critical element of technical skills (Dkt. #13, D. p. 258). Accordingly, **IT IS RECOMMENDED** that the AJ's decision not be overturned.

### 3. Retaliation

Plaintiff cannot establish the necessary *prima facie* case that her termination or Chief Brown's March 14, 2006, recommendation to remove her from Defendant's employment was in retaliation for her November 2003 EEO settlement. To establish a *prima facie* claim of retaliation, a plaintiff must prove four elements: (1) that she engaged in activity protected by Title VII; (2) that the employer knew of the protected activity; (3) that the employer thereafter took an adverse employment action against the plaintiff, or that the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and(4) that a causal connection existed between the protected activity and the adverse employment action or harassment. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000). The facts establish the first three elements: that Plaintiff engaged in protected EEO activity, that her employer knew about her EEO settlement in November 2003, and that she was subjected to an adverse employment action on May 6, 2006.

Plaintiff, however, has not produced any evidence on the fourth element showing a causal connection between her EEO activity and her termination. To establish a casual connection, a plaintiff must proffer evidence sufficient to raise the inference that her protected activity was the

likely reason for the adverse action. *Dixson v. Gonzales,* 481 F.3d 324, 333 (6th Cir. 2007). The mere fact that an adverse employment action takes place after protected EEO activity has occurred does not suffice to support a finding of a causal connection between the EEO activity and the adverse employment action. *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1314 (6th Cir. 1989).

Plaintiff has also failed to establish a prima facie case of retaliation regarding the proposed removal initiated by Chief Brown on March 14, 2006. While Chief Brown was aware that Plaintiff had transferred into his unit as a result of an EEO Settlement in November 2003, there is no evidence that he had any knowledge of Plaintiff's other EEO activity (Dkt. #15, Tr. pp. 103, 108). Without any evidence showing a casual connection between the EEO settlement in November 2003 and the proposed termination letter issued by Brown in March 2006 or the final decision made by Michael Wheeler, Plaintiff's retaliation claim should not proceed further.

Even if Plaintiff were able to establish a *prima facie* case of retaliation, Defendant has produced legitimate nondiscriminatory reasons for terminating Plaintiff's employment. And finally, Plaintiff has not produced any evidence of a retaliatory motive on the part of her supervisors. In the absence of such evidence, she cannot satisfy her burden of proof. *Nguyen v. City of Cleveland*, 229 F.3d 559, 562-63 (6th Cir. 2000). Accordingly, **IT IS RECOMMENDED** that **SUMMARY JUDGMENT** on the issue of retaliation **BE GRANTED** in Defendant's favor.

### 3. Gender Discrimination

To establish a Title VII discrimination claim, a plaintiff must either present direct evidence of discrimination or introduce circumstantial evidence that would permit an inference of discriminatory treatment. *Johnson v. University of Cincinnati*, 215 F.3d 561, 572 (6th Cir.

18

2000). "The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997). Under the direct evidence approach, once the plaintiff introduces evidence that the termination was because of her protected status, the burden of persuasion shifts to the employer to prove that it would have terminated the plaintiff even if they had not been motivated by discrimination. *Johnson* at 572. Direct evidence of intentional discrimination must show that employer relied on the protected status in the making of its employment decision. *Hopkins v. Electronic Data Systems Corp.,* 196 F.3d 655, 660 (6th Cir. 1998).

In the absence of direct evidence, the Sixth Circuit applies a burden-shifting analysis used

to employment discrimination claims brought under Title VII. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence. As it would apply in this case, Plaintiff must prove by circumstantial evidence that Michael Wheeler, Chief Brown or Chief Lawrence treated her differently than similarly situated males who engaged in the same or similar conduct. She must also prove that any difference in treatment was based on intentional discrimination as opposed to some other bona fide business reason. *Furnco Construction Corp. v. Waters*, 438 U.S. 567 (1978); *Mitchell v. Toledo Hospital* 964 F.2d 577, 582-83 (6th Cir. 1992).

Plaintiff's direct evidence of alleged discrimination stems from when she first arrived at the police unit. According to Plaintiff, Chief Lawrence asked her if she really wanted to work in a department staffed primarily by men (Dkt. #15, Tr. pp 150). Plaintiff responded that "it

couldn't be so bad." *Id*. Next, Plaintiff testified that Chief Brown asked her on one occasion whether she dates married men. She alleged that when she told him "No", there was an innuendo that she was "sexually depressed" and unable to "get along with people" (Dkt. #15, Tr. pp 151). Plaintiff also testified that the office joking and banter were not " really dirty." *Id*. While the above statements and overtones certainly did not create the most respectful of environments, they are not as a matter of law direct evidence of discriminatory animus leading to her termination, because they do not show a causal connection between Michael Wheeler, Chief Brown or Chief Lawrence's decision to terminate her employment and her being a woman. Likewise, Plaintiff has failed to produce circumstantial evidence of disparate treatment.

Even assuming Plaintiff were able to establish a *prima facie* case, the defendant articulated a legitimate nondiscriminatory reason for her termination, specifically Plaintiff's unacceptable performance between November 2005 and February 2006. Mr. Wheeler testified that he sustained the termination because Plaintiff failed to keep track of time and attendance for the employees in the police unit causing employees not to receive full pay for the hours that they had worked; failed to properly handle travel for the employees and failed to make sure that appropriate records were sent to the U.S. District Court (Dkt. #15, Tr. pp 7, 8). Mr. Wheeler further testified that he believed that Plaintiff's performance would not improve in light of the fact that Plaintiff made these failures during her PIP with the assistance of training and supervisory oversight as further reason for termination (Dkt. #15, Tr. pp 11-13). Mr. Wheeler considered that very few employees fail PIP and that termination was the appropriate penalty for someone who fails to perform the critical element of his or her job (Dkt. #14, D. pp. 422-25, 427-430).

Furthermore, Plaintiff failed to produce evidence that the above stated bona fide business reasons for the termination were pretextual. For a Plaintiff to establish pretext, she must show by a preponderance of the evidence that the employer's reasons "(1) had no basis in fact, (2) did not actually motivate its conduct, or (3) were insufficient to warrant the challenged conduct." *Browning v. Department of the Army,* 436 F.3d 692, 695 (6th Cir. 2006). Failure to raise a genuine issue of material fact on the issue of pretext, results in a summary judgment in favor of the employer. *Browning,* 436 F.3d at 696. Her failure to produce evidence on the issue of pretext, along with the lack of a genuine issue of material fact as to the legitimacy of Defendant's proffered business reason and disparate treatment, leads to the recommendation that summary judgment be entered for Defendant on Plaintiff's gender discrimination claim.

### 5. Disability Discrimination

#### a. Failure to Exhaust

Plaintiff abandoned her claim of disability discrimination claim before the MSPB, and thereby failed to exhaust her administrative remedies relative to that claim. Federal employees asserting Title VII claims must exhaust their administrative remedies as a precondition to filing a civil action in federal district court. *Brown v. General Servs. Admin.*, 425 U.S. 820, 832, 96 S.Ct. 1961, 1967, 48 L.Ed.2d 402 (1976). Federal employees who are affected by adverse employment actions may assert their related Title VII claims in an appeal to the MSPB, an independent, quasi-judicial federal administrative agency established to review civil service decisions and they must do so prior to initiating a civil action in federal court. *See* 5 U.S.C. § 7701. When an employee chooses to appeal to the MSPB, the employee has the right to raise a discrimination claim as an affirmative defense. 5 C.F.R. §1201.153. An employee also has a

right to an MSPB decision on the discrimination claim. 5 C.F.R.§1201.156.  A discrimination claim may be eliminated from the MSPB case either by explicit waiver or through the action of the petitioning party before the MSPB.

Plaintiff waived her disability discrimination claim when she refiled her MSPB appeal in July 2006 failing to offer any evidence of disability discrimination during the hearing.( (Dkt. #13, D. p. 257, Dkt. #15, Tr. pp. 150-54).  When the MSPB issued its Initial Decision affirming her termination, it stated that Plaintiff waived her disability discrimination claim (Dkt. #13, D. p. 257).  It should be noted that Plaintiff who is now acting *pro se* was represented by an attorney when her case was before the MSPB.  In light of the foregoing, plaintiff abandoned the disability discrimination claim before the MSPB.  Therefore, she is not entitled to a trial *de novo* on this issue.

### b. *Prima Facie* Case of Disability Discrimination

The Rehabilitation Act prohibits federal employers from discriminating against employees on the basis of a disability. 29 U.S.C. § 794(a). Plaintiff alleges that Defendant violated its duty under the Rehabilitation Act by terminating her employment and failing to accommodate her broken ankle. In order to establish a *prima facie* case of disability discrimination, a plaintiff must show that(1) he is an individual with a disability, (2) who was otherwise qualified to perform a job's requirements, with or without reasonable accommodation, and (3) who was discriminated against solely because of his disability.  *Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002).  As to a failure to accommodate claim, a plaintiff must prove that (1) she is an individual with a disability, (2) who was otherwise qualified to perform a job's

requirements, with or without reasonable accommodation, (3) the employer was aware of her disability, (4) an accommodation was needed, and (5) the employer failed to provide the necessary and reasonable accommodation. *Gaines v. Runyon*, 107 F.3d 1171 (6th Cir. 1997).

Plaintiff has failed to show that she is disabled within the meaning of the Rehabilitation Act. The Rehabilitation Act defines an "individual with a disability" as any person who "(I) [h]as a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 C.F.R. §1613.702(a). This is a threshold requirement which Plaintiff must satisfy in order to maintain a disability discrimination claim. *Jasany v. United States Postal Serv.*, 755 F.2d 1244, 1248 (6th Cir. 1985). "The determination of whether an individual has a disability is not necessarily based on the name of diagnosis or the impairment the person has, but rather on the effect of that impairment on the life of the individual." 29 C.F.R. §1630.2(j).

Plaintiff broke her right ankle and was absent from work for at least four months. Her impairment, however, did not rise to the level of a disability because it did not substantially limit her from performing any major life activities. Major life activities are defined in 29 C.F.R. § 1613.702(c) as functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.  EEOC regulations define the statutory term "substantially limits" as "(I) unable to perform a major life activity that the average person in the general population can perform; or (ii) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. §1630.2(j)(1).  Plaintiff did not proffer any

evidence that her broken ankle significantly restricted her ability to engage in major life activities, and therefore she was not disabled.

Furthermore, Plaintiff has not produced any evidence showing her termination was related in any way to her broken ankle, only that Plaintiff was removed from her position because of poor performance. Because Plaintiff has failed to produce any evidence of discriminatory animus by the officials who were involved in her termination, **IT IS RECOMMENDED** that **SUMMARY JUDGMENT BE GRANTED** for Defendant on her disability discrimination claim.

## III.     RECOMMENDATION

For the reasons indicated above, it is **RECOMMENDED** that Plaintiff's  motion for summary judgement be **DENIED** and Defendant's  motion for summary judgment be **GRANTED**. The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this

Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/Steven D. Pepe
United States Magistrate Judge

Dated: September 25, 2008

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 25, 2008.


s/V. Sims
Case Manager